**Duane J. OELRICH, Respondent (C5–88–61), Relator (CX–88–69),**

v.

**SCHLAGELS, INC. and Employers Insurance of Wausau, Respondents,**

**Jack Roach Ford and American Mutual Insurance Company, Relators (C5–88–61), Respondents (CX–88–69),**

**and**

**Minnesota Department of Human Services, Intervenor,**

**MADA Insurance Company, Intervenor, Respondent,**

**The Special Compensation Fund, Respondent.**

**Nos. C5–88–61, CX–88–69.**

Supreme Court of Minnesota.

July 29, 1988.

Janet Monson, Andrew W. Lynn, Minneapolis, for Jack Roach Ford and American Mut. Ins. Co.

Thomas D. Mottaz, Randall J. Fuller, Anoka, for Duane J. Oelrich.

Lisa Gustafson, Minneapolis, for Schlagels, Inc. and Employers Ins.

James W. Schutjer, St. Paul, for MADA Ins. Co.

Winston Ehlmann, Asst. Atty. Gen., St. Paul, for Special Compensation Fund.

WAHL, Justice.

Jack Roach Ford and its insurer, American Mutual Insurance Company, appeal a decision of the Workers' Compensation Court of Appeals (WCCA) holding that a person injured while participating in on-the-job training as a part of a rehabilitation program following a prior work injury is entitled to workers compensation benefits from the trainer. We affirm.

Duane J. Oelrich sustained a lower back injury on December 17, 1980, while working as a mechanic for Schlagels, Inc. He was paid temporary total, medical, and permanent partial disability benefits for 20% of the spine by Schlagels' insurer, Employers Insurance of Wausau (Wausau).

Oelrich began working with a rehabilitation consultant through the Minnesota Division of Vocational Rehabilitation following surgery on his back in June 1981. As a part of his rehabilitation, he began a program at Jack Roach Ford (Roach) designed to train him for a position with Roach as a parts counter person. The training program was the result of an agreement between Oelrich, Schlagels' insurance carrier, and Roach. Under the terms of the agree-

ment, set forth in a Memorandum of Understanding, Oelrich would be trained as a parts counter person at Roach from May 2, 1983 to October 31, 1983. Following the six-month training period, Oelrich was to continue work at Roach. The Memorandum of Understanding was signed by Oelrich, his qualified rehabilitation consultant, and agents of Wausau and Roach, and filed with the rehabilitation services section of the Department of Labor and Industry.

Oelrich's duties during the training period included ordering parts, stocking shelves, selling parts and running errands. While in the six-month training period, Oelrich received temporary total disability benefits from Schlagels and Employers of Wausau and did not receive a wage from Roach. Schlagels paid Roach $200 per month in return for training Oelrich.

On September 16, 1983, while receiving training at Roach, Oelrich was instructed to travel to an auto parts store to pick up parts. Oelrich drove to the parts store in a company vehicle. Oelrich parked in front of the store and walked in front of the vehicle when a car struck it from behind. The impact caused the vehicle to move forward, throwing Oelrich onto the hood.

Oelrich was able to finish his training period with Roach, and on November 1, 1983 began receiving wages from Roach. Oelrich's employment was terminated by Roach in September, 1985 as the result of a wage dispute. He remained unemployed until April, 1986, when he obtained other employment at no wage loss.

Immediately following the September 16, 1983 injury, Oelrich received treatment for injuries to his right knee and lower back. In February, 1984, Oelrich began receiving chiropractic treatments for neck pain and headaches. In 1985, he received additional treatment for shoulder and neck pain from a neurologist and an orthopedic surgeon.

Oelrich filed a petition claiming entitlement to temporary total benefits, temporary partial benefits, and an additional 10% permanent partial disability of his back.

Following a hearing, the compensation judge determined that the 1983 injury was not compensable as there was no employment relationship between employee and Roach when the accident occurred on September 16, 1983. The compensation judge also determined that the 1983 injury did not arise out of employee's work at Schlagels because the injury was too remote from employee's work at Schlagels. For this reason the 10% permanent partial disability to the back and medical expenses for treatment to the neck, shoulder and knee, which the compensation judge related to the 1983 injury, were deemed not payable. The compensation judge ordered Wausau to pay temporary partial disability from November 1, 1983 through August, 1985 while Oelrich worked at Roach and temporary total disability from September, 1985 through April 14, 1986 during his job search. Wausau was also held liable for medical treatment for employee's low back.

Oelrich appealed. The WCCA determined that Oelrich was under the control of Roach performing activities of direct benefit to Roach and held Roach liable for the 1983 injury. The WCCA ordered Roach to pay for the medical expenses and 10% permanent partial disability of the back arising from that injury and remanded the matter for apportionment of temporary partial and temporary total disability benefits between Schlagels and Roach. Roach petitioned this court for a writ of certiorari to review the decision of the WCCA. Oelrich also filed a petition. We consolidated the appeals.[1]

The dispositive issue before us is whether a worker injured while performing services during an on-the-job training rehabilitation program following a prior work injury is entitled to workers' compensation benefits from the trainer. Roach argues that no employment relationship existed under these circumstances and that therefore the trainer could not be liable for benefits.

Whether a person is an employee for purposes of workers' compensation is a

---

1. Oelrich argues that his 1983 injury is compensable and that if this court finds Roach not liable, then the first employer, Schlagel's, must be found liable. Because we affirm the WCCA, we need not reach this issue.

question of fact in certain cases. *See Hagberg v. Colonial & Pacific Frigidways, Inc.*, 279 Minn. 396, 403, 157 N.W.2d 33, 39 (1968). However, where the evidence is free from conflict as to the controlling facts, the question of whether a person is an employee becomes one of law. *Darvell v. Paul A. Laurence Co.*, 239 Minn. 55, 59, 57 N.W.2d 831, 834 (1953); *see also, Egeland v. State*, 408 N.W.2d 848, 850 (Minn. 1987).

In this case there are no disputed facts regarding the terms and conditions of Oelrich's training at Roach. The only question is whether Oelrich's injury in the scope and course of his work for Roach as an on-the-job trainee entitles him to benefits under the workers' compensation statutes. Stated another way, the sole issue is whether Oelrich was an employee of Roach within the meaning of Minn.Stat. § 176.011, subd. 9 (1982). The question presented is therefore a question of law.

We have not previously addressed the precise issue raised here but our case law generally supports the WCCA decision. In *Erickson v. Holland*, 295 N.W.2d 576 (Minn.1980), we held that a claimant, who was injured while taking a test intended to demonstrate his ability to operate a tractor prior to commencing regular employment as a truck driver, was entitled to workers' compensation benefits from the common carrier. We stated:

> Relators claim, nevertheless, that Erickson [the claimant] was not performing substantial services for Curtis [the common carrier] when he was injured and point to the admitted fact that he did not expect payment for taking the tests. Curtis' interest in obtaining well-qualified drivers was plainly furthered by Erickson's participation in the tests, however, and it is reasonable to infer that his doing so conferred a substantial benefit upon Curtis in view of their objective. The fact he did not expect payment for the tests does not seem significant in light of the fact that they were preliminary to work for which he did expect payment."

*Id.* at 579–80. The same factors are present here. As in *Erickson*, Oelrich's training period was designed to lead to paid employment at Roach and Roach was to receive the benefit of a well-trained employee.

■ It is not necessarily dispositive that Oelrich received no wage, salary or benefits from Roach during his training period. In *Judd v. Sanatorium Commission of Hennepin County*, 227 Minn. 303, 307–08, 35 N.W.2d 430, 433–34 (1948), we held that a state university home economics department graduate, injured while assisting the cook at the county sanitorium during her internship course, was an employee of the county entitled to workers compensation where the county had exclusive control over her work although she was at the sanitorium primarily to obtain practical experience in connection with her internship. Similarly, in *Krause v. Trustees of Hamline University*, 243 Minn. 416 423–24, 68 N.W.2d 124, 129 (1955), we held that a student nurse who performed services and received room and board was an employee within the meaning of the workers' compensation act.

Although the students in *Judd* and *Krause* received room and board as compensation for their services, payment, according to Professor Larson, may take many forms. Larson notes:

> The element of payment, to satisfy the requirement of a contract for hire, need not be in money, but may be in anything of value. Board, room, and *training*, such as might be furnished a student nurse or hospital interne or laboratory assistant trainee, or student teacher are treated as the equivalent of wages.

1C Larson, *Workmen's Compensation Laws*, § 47.43(a) (1986) (footnotes omitted, emphasis added). Thus, Oelrich's training itself represents a form of payment sufficient to satisfy the requirement of a contract for hire under § 176.011, subd. 9 (1982).

■ At the time of the 1983 injury, Oelrich was performing services for Roach and Roach clearly obtained a benefit from his training. Roach had a free employee

during the training period in addition to a well-trained employee at the end of that period. As with the workers in *Erickson, Judd* and *Krause,* an employment relationship existed, such that Oelrich falls within the coverage of the Workers' Compensation Act. We hold that a worker injured while performing services for the benefit of a trainer during an on-the-job training rehabilitation program following a prior work injury is entitled to workers compensation benefits from the trainer.

We affirm the decision of the Workers Compensation Court of Appeals and remand the matter to the compensation judge to determine apportionment of liability for temporary partial disability and temporary total disability as between Jack Roach Ford and Schlagels, Inc. and to determine liability, if any, of the special compensation fund under Minn.Stat. § 176.131, subd. 1a.[2]

Affirmed and remanded.

---

2. Application of Minn.Stat. § 176.131, subd. 1a presupposes the employment relationship that we have found to exist between Oelrich, the on-the-job trainee, and the trainer Jack Roach Ford.