BENHAM, Justice,
dissenting.
In my opinion, this case calls on the Court to reconsider and refine the holding in our recent opinion Zaldivar v. Prickett, 297 Ga. 589 (774 SE2d 688) (2015). In Zaldivar, this Court granted a petition for certiorari and requested the parties to brief one particular issue: whether OCGA § 51-12-33 (c) permits the defendant in a tort action involving an automobile collision to name, as a nonparty whose fault should be apportioned to reduce the total damages for which the defendant is liable, that party who allegedly negligently entrusted to the plaintiff the vehicle plaintiff was driving. In the Zaldivar case, that nonparty was the plaintiff’s employer. The parties in Zaldivar, however, were not asked to address the unique issues surrounding whether the fault of a nonparty who is an employer, immune from tort liability pursuant to the workers’ compensation scheme of this state, should be included in the jury’s apportionment of damages pursuant to the apportionment statute. Accordingly, the parties did not brief these issues or address them in their arguments to the Court. Likewise, the majority opinion in Zaldivar focused primarily on whether negligent entrustment of a vehicle to a plaintiff by a non-party is a tort against the plaintiff that can be a proximate cause of plaintiff’s injury. The workers’ compensation issues, however, are front and center in the case currently before us.
When construing subsection (c) of the apportionment statute in conjunction with OCGA § 34-9-11, the exclusive remedy provision of Georgia’s workers’ compensation law, I conclude that a jury is not permitted to assess a percentage of fault to a nonparty employer of a plaintiff who sues a product manufacturer and seller for negligence in failing to warn about a product danger. I am convinced that the *305 relevant terms of the workers’ compensation law provides the “compelling reason” sought by the majority opinion in this case to treat nonparty employers with immunity from suit differently from other nonparties against whom apportionment may be assessed. Consequently, I believe the answer to the certified question is no. As I did in Zaldivar, I respectfully dissent. See Zaldivar, supra, 297 Ga. at 604 (Benham, J., dissenting). In my opinion, the majority does not properly consider or analyze the unique aspects of Georgia’s workers’ compensation scheme and the unintended consequences of such an application of the apportionment rule upon plaintiffs in tort actions who also have claims against their employer which are subject to the workers’ compensation law, and also upon nonparty employers who are subject to the terms of that law.
Compliance with Georgia workers’ compensation law is compulsory. The employer, as defined by the workers’ compensation law, is subject to both civil and criminal penalties for failure to provide coverage of the benefits to employees required by that law.[6] The benefits set forth in the law are the exclusive remedy available to an employee for a work-related “injury,” as that term is defined by statute.[7] Those benefits are limited.[8] As a trade-off, the workers’ compensation law grants a no-fault remedy to the employee for covered injuries. The quid pro quo established between the interests and rights given up and the benefits received by both the employer and the employee is the underlying policy of the law. See Samuel v. Baitcher, 247 Ga. 71, 72 (274 SE2d 327) (1981).
An employee who sustains an injury that is compensable under the workers’ compensation law may, as in this case, pursue a claim for damages against a third party. One of the rights conferred to the employer under the workers’ compensation law is the right of subro-gation against the employee’s recovery of damages. Pursuant to OCGA § 34-9-11.1 (b), once an employer’s liability under the workers’ compensation law has been at least partially paid the employer or its insurer is granted a right of subrogation against the employee’s recovery of damages from a third party, up to the amount of workers’ compensation benefits paid to the employee.[9]
*306 However,
the employer’s or insurer’s recovery under this Code section shall be limited to the... amount of... benefits... paid under this chapter and shall only be recoverable if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.
OCGA§ 34-9-11.1 (b). Just as in the case of subrogation by an automobile insurance carrier or a medical insurer, “the injured party’s employer [is] not permitted to seek reimbursement from the injured party unless and until the amount of settlement received by or the judgment awarded to the injured party exceeds the injured party’s economic and noneconomic damages.” Thurman v. State Farm Mut. Auto. Ins. Co., 278 Ga. 162, 164 (598 SE2d 448) (2004); see also Ga. Elec. Membership Corp. v. Garnto, 266 Ga. App. 452, 453 (597 SE2d 527) (2004). That is, subrogation is permitted only if the injured employee will be left whole after the workers’ compensation benefits are subtracted from the amount recovered from the third party. Such a determination is to be made by the trial court, not a jury. See Canal Ins. Co. v. Liberty Mut. Ins. Co., 256 Ga. App. 866, 872-873 (2) (570 SE2d 60) (2002).
In determining whether an injured employee will be left “fully and completely compensated” after subrogation by the employer, the trial court is to consider the issue of full compensation as that term is used in the subrogation statute of the workers’ compensation law, not pursuant to the general principles of tort law, by which compensation is diminished as a result of defenses available to the defendant. Canal, supra, 256 Ga. App. at 872 (2), quoting Homebuilders Assn. of Ga. v. Morris, 238 Ga. App. 194, 196 (518 SE2d 194) (1999). That is, OCGA § 34-9-11.1 speaks of full compensation for the employee’s economic and noneconomic damages, and “does not direct courts to take into account the employee’s contributory/comparative negligence or assumption of the risk, and we must assume the omission was intentional.” Homebuilders Assn. of Ga., supra, 238 Ga. App. at 196. By the same reasoning, full compensation for the employee’s damages does not refer to the damages awarded against the nonparty *307 defendant after the defendant’s liability has been diminished by the apportionment rule of OCGA § 51-12-33 (c). Only when the amount awarded to the employee plaintiff plus the value of the workers’ compensation benefits received exceeds the injured employee’s full economic and noneconomic damages will the employer or its insurer be permitted to recover some or all the benefits it has paid pursuant to the subrogation statute.
If a percentage of fault, in the tort sense of the word, is assessed to the employer as a nonparty in a lawsuit by the employee against a third party, and that percentage of fault reduces the tort damages awarded to the plaintiff from the third-party defendant, then the injured employee will not have been fully compensated for his or her injury.[10] This eliminates one of the rights granted to the employer in exchange for the no-fault liability imposed against it under the law. That is, as a result of applying OCGA § 51-12-33 (c) to the fault of an employer, the employer’s right of subrogation will be moot.
Applying subsection (c) to the fault of employers infringes upon another benefit granted to employers in exchange for their no-fault liability under the workers’ compensation law. Since workers’ compensation is the exclusive remedy available against an employer for injuries covered under the law, one of the trade-offs to the no-fault liability imposed by the law is the employer’s exemption from the costs associated with defending tort litigation. Even though OCGA § 51-12-33 does not diminish the employer’s immunity from tort liability, it means the employer may very likely be required to bear the expense and business disruption of responding, as a nonparty, to discovery in the employee-plaintiff’s action against a third-party defendant seeking to apply the apportionment rule to the fault of the employer. The defendant to that litigation will want to maximize the fault assigned to the employer in order to diminish the damages it must pay if found liable to the employee plaintiff, and the plaintiff will want to minimize the fault assigned to the employer in order to maximize recovery from the defendant. The dispute over the employer’s percentage of fault for the plaintiff’s injury may very well be protracted and expensive to the employer, even though the employer “has no dog in the fight,” since it is clear that a finding of fault against an employer does not create liability on the part of the employer for damages. See OCGA § 51-12-33 (e). Predictably, the parties will seek *308 the production of business records and other documents from the employer, may seek access to the workplace for observation and testing of equipment, and may seek the discovery and trial testimony of managers and co-employees, thus requiring the employer to incur substantial litigation costs and economic down-time to respond. Predictably, the cost to an employer to respond to discovery when its own fault is at issue will be greater, perhaps substantially so, than the costs to respond if its fault were not at issue in the lawsuit against the third party. This undercuts the employer’s bargained-for exemption from incurring tort litigation costs.[11]
Preventing the injured employee from being fully compensated for his or her injury obviously prejudices the employee. While it is part of the employee’s trade-off, pursuant to the quid pro quo of the workers’ compensation scheme, not to be able to recover tort damages from the employer, no support whatsoever exists for the notion that the workers’ compensation law is meant to deprive an employee of his or her ability to recover fully in tort from a third-party tortfeasor whose fault is shown to be a proximate cause of a work-related injury. But that is exactly the consequence of including an employer, exempt from tort liability under the workers’ compensation law, as a non-party, pursuant to OCGA § 51-12-33 (c), whose tort liability may be considered by a trier of fact to reduce a damages award from a third-party defendant. See Carroll v. Whitney, 29 SW3d 14, 19 (Tenn. 2000) (discussing the “basic unfairness” that would result if apportionment of the plaintiff’s employer’s fault were permitted to reduce the damages due a plaintiff in a tort action against a third party where the employer could then reduce the award further by exercising its right of subrogation under the workers’ compensation law).[12] Only in a case in which the value of the workers’ compensation *309 benefits paid to the employee meets or exceeds the amount by which the third-party’s liability has been reduced will the plaintiff be fully compensated for his or her injuries. This will be a rare case, as illustrated by the many exemptions of the full measure of an employee’s loss from workers’ compensation benefits.[13]
The workers’ compensation subrogation statute was originally enacted in 1992,[14] well before the apportionment statute was rewritten in 2005[15] to provide for the apportionment of fault to nonparties in an action for personal injury or injury to property. All statutes are presumed to be enacted by the General Assembly with full knowledge of the existing law and are
to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and its meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.
(Citations and punctuation omitted.) Retention Alternatives, Ltd. v. Hayward, 285 Ga. 437, 440 (678 SE2d 877) (2009). I conclude that the General Assembly did not intend the apportionment statute to upset the carefully balanced interests of the employer and employee set forth in Georgia’s workers’ compensation law. Given the unique statutory rules applicable to workers’ compensation benefits and obligations, and for the reasons set forth in this dissenting opinion, I would hold that OCGA § 51-12-33 (c) does not permit a jury to assess a percentage of fault to a nonparty employer of a plaintiff who, as here, sues a third party for injuries sustained in a work-related incident because to do so would interfere with the careful balance of *310 interests set forth in the workers’ compensation law. I would reverse this Court’s holding in Zaldivar with respect to its application to nonparties who are employers subject to the workers’ compensation laws for the plaintiff’s injury.
Decided November 16, 2015
Reconsideration denied December 10, 2015.
The Parker Firm, Brian S. Parker; The Blaska Firm, Thomas C. Blaska, Thomas C. Blaska II, Dana J. Norman, for appellants.
Gray, Rust, St. Amand, Moffett & Brieske, Matthew G. Moffett, Jason D. Hergenroether, for appellees.
Robin F. Clark; Slappey & Sadd, James N. Sadd, Edward M. Wynn III; Harris Penn Lowry, Darren W. Penn, Madeline E. McNeeley, Yvonne S. Godfrey; McKenna Long & Aldridge, Dara D. Mann; Dentons US, Robin S. Conrad, James R. Evans; Warner, Norcross & Judd, Matthew T. Nelson, amici curiae.
I am authorized to state that Justice Hunstein joins in this dissent.

 See OCGA §§ 34-9-126; 34-9-18.

 See OCGA §§ 34-9-1 (4); 34-9-11.

 For example, pain is not compensable unless that pain itself results in a physical disability. See Bouldware v. Delta Corp., 160 Ga. App. 100 (286 SE2d 333) (1981).

 In fact, this Code section grants the employer the right to intervene in an action brought by the employee against a third party in order to protect its subrogation right, and even the right to assert the employee’s claim against the third party in an action brought either in the *306 employer’s name or the name of the employee, if the employee does not file his or her own action within a specified period of time. Id. at (c).

 Only if the employer is found by the trier of fact to hear no fault for the plaintiff-employee’s damages, and yet the employer paid workers’ compensation benefits to the employee, will the plaintiff remain whole once the damages awarded against the third-party defendant are reduced by the value of workers’ compensation benefits paid, pursuant to the subrogation rule.

 Regardless of the expense that may be incurred by a nonparty employer whose fault becomes an issue at trial, that the nonparty employer has no interest in the outcome of whether it is deemed to have some fault highlights another issue - the uncertainty of determining the actual fault of a party without that party’s interested participation in the suit. That is one of the reasons the Uniform Comparative Fault Act of 1977 provides for apportionment of damages only to parties to the action and excludes nonparties from being assigned a portion of responsibility for plaintiff’s injury. See Jonathan Cardi, Apportioning Responsibility to Immune Nonparties: An Argument Based on Comparative Responsibility and the Proposed Restatement (Third) of Torts, 82 Iowa L. Rev. 1293, 1335 (1997) (citing Uniform Comparative Fault Act § 2 (a), 12 U.L.A. 46 (Supp. 1990) and former comment to section 2 (a), now found at Comment at “Parties”).

 Responding to the majority opinion, I do not believe the Tennessee Supreme Court’s discussion of the “basic unfairness” of permitting apportionment to reduce damages due a plaintiff in an action against a third party, when the employer could then reduce the award pursuant to subrogation permitted under workers’ compensation law, to he diminished by the fact that Tennessee’s apportionment law was created by case law and not by statute.

 An employer’s statutory liability to an injured employee under the workers’ compensation law does not correlate to the amount of damages the employer would owe the employee if it were subject to common law tort liability, or to the employer’s percentage of fault as applied to the employee’s damages if OCGA § 51-12-33 (c) is deemed to apply to an employer. This is because workers’ compensation benefits are defined by statute and not according to the employee’s actual damages that may, or may not, have been proximately caused by the employer’s negligence, if any. Because the benefits are due regardless of fault, they may exceed in some instances the amount the employer would owe if it were liable for damages in tort. But in many instances, workers’ compensation benefits will not equal the damages that would be owed if the employer were liable in tort. For example, as noted in footnote 8 of this opinion, supra, typically, the employee may not recover benefits for pain and suffering, whereas pain and suffering may be included in tort damages. Also, workers’ compensation benefits do not fully cover lost wages, whereas full compensation for lost wages may be included in tort damages.

 Ga. L. 1992, p. 1942, § 2.

 Ga. L. 2005, p. 1, § 12/SB 3.